| Case No. | 2:99-CR-00257-CAS - 3 | | Date | April 13, 2020 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Laura Elias | Jehan Pernas |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Yvette Wade-Waiver Of Appearance[631] | NOT | X | | Brianna Mircheff | X | X | |

**Proceedings:** TELEPHONE HEARING ON MOTION FOR MODIFICATION OF TERM OF IMPRISONMENT PURSUANT TO 18 U.S.C. § 3582(c)(1)

## I. INTRODUCTION

Following her conviction at trial on August 19, 1999, defendant Yvette Wade was sentenced on December 21, 1999 to a mandatory 877-month—73 years and 1 month—sentence for her involvement in a string of armed robberies committed at K-Mart retail stores between May 1997, and January 1998. Wade, who is presently incarcerated and has served more than 20 years of that sentence, now moves for a reduction to her sentence pursuant to 18 U.S.C. § 3582(c)(1) based on evidence of her rehabilitation and changes in federal law shortening the mandatory sentence for her crimes.

Wade filed the instant motion on December 3, 2019. See ECF No. 619 ("Mot."). The government filed an opposition on March 27, 2020. See ECF No. 628 ("Opp."). Wade filed a reply on March 30, 2020. See ECF No. 629 ("Reply"). Pursuant to the agreement of the parties, the Court took this matter under submission, and distributed a tentative order granting Wade's motion, but requesting oral argument as to the appropriate sentence in this case. The Court held a hearing on April 13, 2020. Having considered the record and the parties' respective arguments, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Wade's Underlying Offenses And Conviction

In 1997, Wade was 34 years old and the single parent of three children working at a K-Mart in Los Angeles. See ECF No. 577 ("Wade PSR") ¶¶ 20-52; see also Ex. G ("Wade Decl.") at 1-4. Wade had been working at K-Mart for more than ten years, but was struggling with her finances and managing her household. See Wade PSR ¶¶ 110-11, 117; Wade Decl. at 1. Knowing that Wade's employment gave her insights into the standard layout and operation of K-Mart stores, and that Wade was struggling financially, a "friend" (and future codefendant) approached Wade with the proposition that she help several other individuals rob K-Mart stores and share in the proceeds. See Wade PSR ¶ 20; Wade Decl. at 1-2. "Out of desperation" and "guaranteed that no one would get hurt" Wade accepted the proposition. See Wade Decl. at 1.

The ensuing five armed robberies were serious, but Wade's involvement was limited. The first robbery took place on May 25, 1997, at a K-Mart store on South Western Avenue in Los Angeles where Wade was working. See Wade PSR ¶¶ 22. Wade gave her codefendants information about the store, provided them with K-Mart vests that allowed them to move around the store, and posed as a frightened employee during the robbery when her codefendants threatened to harm bystanders if they did not cooperate. Id. At one point, Wade purported to follow commands from the gunmen and handcuffed two fellow K-Mart employees together. Id. No one was hurt, but K-Mart suffered a loss of $42,167 in cash. Id. ¶ 26.

The second robbery took place on October 11, 1997, at a K-Mart store in Torrance. Id. ¶ 34. Wade did not enter the store, but served as a lookout. Wade's codefendants entered the store with a gun and took $30,673. Id. The third robbery took place on November 9, 1997, at another K-Mart store on South Western Avenue in Los Angeles. Id. ¶ 37. Wade permitted the codefendants to meet at her home to plan this robbery, and drove one other codefendant to the K-Mart store in question. Id. ¶ 38. Wade did not enter the store, or remain on the scene, but her codefendants brandished a gun inside, made threats, and stole $26,111 in cash. Id. ¶ 41. The fourth robbery took place on December 24, 1997, at a K-Mart on South La Cienega Boulevard in Inglewood. Id. ¶ 45. Wade did not enter the store, but again served as a lookout. Two of Wade's codefendants entered the store with guns and threatened to harm store managers if employees did not comply. Id. ¶¶ 43-44. The robbers took $31,676 in cash and $1,125 in checks. Id. ¶ 46. The fifth robbery took place on January 19, 1998, at a K-Mart on Sepulveda Boulevard in Harbor City. Id. ¶¶ 47-51. Wade served as a lookout and did not enter the store, but two of her codefendants entered the store with guns and took $29,553 in cash. Id. ¶ 51.

In total, Wade and her co-defendants stole $189,998 from K-Mart. Wade never brandished a gun, and never entered any of the targeted K-Mart stores except the first one, where she worked and posed as a victim. No K-Mart employees reported any injuries. Id. ¶¶ 52-53.

For her involvement in the robberies, Wade along with six other codefendants were charged in a nine-count indictment: one count of Conspiracy to Interfere with Commerce by Robbery in violation of 18 U.S.C. § 1951; four counts of Interference with Commerce by Robbery in violation of 18 U.S.C. § 1951; and four counts of Using and Carrying a Firearm During a Crime of Violence in violation of 18 U.S.C. § 924(c), corresponding to each of the four counts of Interference with Commerce By Robbery. See ECF No. 1.

On August 19, 1999, a jury found Wade guilty on all counts. See Wade PSR ¶ 5. Although she did not personally possess, use, or carry a firearm during any of the robberies, Wade was convicted on the § 924(c) counts as a coconspirator pursuant to Pinkerton v. United States, 328 U.S. 640 (1946). See United States v. Gaines, 8 Fed. App'x 635, 641-642 (9th Cir. 2001) (affirming Wade and her co-defendants' convictions *inter alia* pursuant to this rule). On December 21, 1999, the Honorable Lourdes G. Baird sentenced Wade to 877 months (or 73 years and one month) of imprisonment, plus 36 months of supervised release. See ECF No. 294 at 3; ECF No. 619 at 14-16. The vast majority of that prison sentence—780 months (or 65 years)—resulted from the four "stacked" mandatory minimum consecutive sentences under § 924(c). Specifically, Judge Baird sentenced Wade to 97 months under the then-mandatory Sentencing Guidelines on each of the § 1951 counts, to be served concurrently, 60 months on the first § 924(c) count, as mandated by statute to be served consecutively to any other count, and 240 months on each of the second, third, and fourth § 924(c) counts, also mandated by statute to be served consecutively.

### B. Wade's Rehabilitation While Incarcerated

Wade has used her time in prison to better herself, learn new skills, be useful, and stay out of trouble. Wade received her GED shortly after sentencing, and has since completed coursework in business, entrepreneurship, parenting, customer service, computer skills, job training, positive decision making, and career planning, among dozens of other classes. See Ex. B at 1-5 (attaching Summary Reentry Plan: Progress Report listing Wade's coursework); Ex. C (attaching a series of 14 merit certificates, and certificates of completion, that Wade has received for several of her accomplishments while incarcerated). In addition to her education, Wade has worked for more than 20 years for UNICOR Federal Prison Industries. See Ex. D (statement of UNICOR supervisor Karen Khan). Wade has excelled in her work, receiving bonuses, exceeding quotas, and receiving high marks for her "exemplary" performance and "consistently respectful attitude toward correction staff, and inmate co-workers." Id. Based on her performance, UNICOR promoted Wade to "Lead Peer." See Ex. E.

In the years since her offenses, Wade appears to have taken responsibility for her actions and reports being pained by the effects they have had not only on the victims of her crimes but also on her family, and especially her children, who are now grown with children of their own. Despite the challenges of parenting a child from federal prison, Wade has remained intimately involved in guiding her children into adulthood and toward good choices. See Ex. F (statement of Wade's daughter Ebony Garry). Wade believes she deserved prison time for her actions since "it was [her] choice" to commit the offenses, and in fact maintains that prison has "saved" her by providing her with a "learning experience" that she needed. See Ex. G at 2, 4. Reflecting on her choices, Wade, now 55 years old, recognizes that her life could have taken another path had she resisted the temptation for "immediate gratification" and looked to stronger examples in her life. Id. at 2. Her mother struggled financially, too, but "never reverted to any illegal activities." Id. at 3. "I could have done it too," Wade says, "I still can. Because this crime does not define who I am or the woman I was destined to be. It is not too late for me." Id.

    **C.**     **Congress Amends 18 U.S.C. § 924(c)**

At the time of Wade's sentencing hearing, conviction on a charge pursuant to § 924(c) imposed a mandatory-minimum 60-month sentence for conviction of a first § 924(c) offense, and additional mandatory-minimum 240-month sentences for conviction on each additional § 924(c) offense. These sentences were also required to be served consecutively, meaning that they could be "stacked" to automatically impose significant terms of imprisonment not necessarily commensurate with the underlying offense. See U.S. Sentencing Comm., Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System (2011) (explaining that the former application of § 924(c) could "lead to sentences that are excessively severe and disproportionate to the offense committed").

Section 403 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("FSA"), eliminated both the higher penalty for second and subsequent § 924(c) offenses, and the stacking feature that required a defendant to serve those sentences consecutively, in cases where a defendant did not have a previous final conviction for a § 924(c) charge at the time of the new § 924(c) offense or offenses. As a result, defendants with no prior § 924(c) convictions today face a mandatory-minimum sentence of 60 months on each § 924(c) count for which they are convicted. Although Congress did not give this amendment retroactive effect, it is undisputed that, had Wade been convicted today for the same offenses for which she was convicted in 1999 and sentenced to the same mandatory-minimum prison term for the § 924(c) counts, she would only have been required to serve a total of 240 months of imprisonment for the four § 924(c) violations—not the 780 months to which she was sentenced on those counts in 1999. See Opp. at 7 n.4 (the government acknowledges this would be true because Wade did not have a previous final conviction for a § 924(c) offense at the time she was convicted).

## III. LEGAL STANDARD

The FSA amended the United States Code to promote the rehabilitation of prisoners and "unwind decades of mass incarceration." See United States v. Rodriguez, --- F. Supp. 3d ----, No. 17-CR-00021-WHO-1, 2019 WL 6311388, at *5 (N.D. Cal. Nov. 25, 2019) (publication forthcoming) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).

Among other things, the FSA amended the procedures by which defendants can seek sentence reductions through modification. Previously, a defendant could only petition the Director of the Bureau of Prisons ("BOP") for a modified sentence, who could then move the district court at his or her discretion for relief. See U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n. 4 (U.S. Sentencing Comm'n 2018) ("U.S.S.G."). "The BOP Director rarely did so." Rodriguez, 2019 WL 6311388, at *5 (citing Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice)).

Correcting this flaw, the FSA now allows defendants to petition district courts directly for sentence modifications. See 18 U.S.C. § 3582(c)(1)(A)(i). The statute sets forth three requirements: "First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. Second, a district court may grant [a sentence reduction] only if 'extraordinary and compelling reasons warrant such a reduction' and 'that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.' Third, the district court must also consider 'the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable.'" Rodriguez, 2019 WL 6311388, at *5 (quoting 18 U.S.C. § 3582(c)(1)(A)) (internal citations omitted).

## IV. DISCUSSION

Wade contends that she is eligible for a modified sentence pursuant to each requirement of § 3582(c). For the reasons discussed below, the Court agrees.

### A. Exhaustion Of Administrative Remedies

Section 3582(c)(1) only permits a defendant to apply to a federal district court for sentence modification "after the defendant has fully exhausted all administrative rights to appeal the failure of the BOP to bring a motion . . . or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Wade contends that she satisfied this requirement because she filed her request with her warden on August 5, 2019 and did not receive a response until October 9, 2019, more than 30 days later. See Ex. H (attaching warden's

response, denying request).[1]  In light of these events, the government does not oppose Wade's motion on grounds that she failed to exhaust her administrative remedies.  The Court accordingly finds that Wade has satisfied the first requirement.

### B.     Extraordinary and Compelling Reasons

Wade contends that her rehabilitation during the 20 years that she has been incarcerated, in combination with what the amendments to § 924(c) demonstrate with respect to appropriateness of her sentence, establish extraordinary and compelling reasons that warrant a reduction to her sentence.  The government responds that, whatever the merits of that argument, § 3582(c)(1)(A)(i) of the FSA limits qualifying "extraordinary and compelling reasons" to those that are "consistent with the applicable policy statements issued by the Sentencing Commission."  The government contends that the "applicable" policy statement—U.S.S.G. § 1B1.13—does not recognize the combination of a defendant's rehabilitation and amendments to § 924(c) as a basis for sentence modification, and argues that Wade's motion must be denied for this reason.

The FSA does not define "what constitutes 'extraordinary and compelling' other than that '[r]ehabilitation of the defendant alone' is insufficient."  Rodriguez, 2019 WL 6311388, at *6 (quoting 28 U.S.C. § 994(t)).  The statute only "directs the Sentencing Commission to promulgate 'the criteria to be applied and a list of specific' extraordinary and compelling examples" consistent with the intent of the FSA.  Id. at *6.  The Sentencing Commission has not yet done so.  As a result, the only policy statement issued by the Sentencing Commission related to what counts as a qualifying "extraordinary and compelling condition" predates the FSA's sweeping revisions to the nation's criminal laws.  Id.  This un-updated policy statement—U.S.S.G. § 1B1.13, relied upon by the government—identifies only four qualifying conditions: (1) a serious medical condition (i.e., that the defendant is either "suffering from a terminal illness" or some other serious condition "that substantially diminishes the ability of the defendant to provide self-care" in prison); (2) the defendant's age in combination with a medical condition (i.e., that the defendant is at least 65 years old, is experiencing deteriorating health, and has served a substantial portion of her sentence); (3) certain family circumstances (i.e., the incapacitation of a

---

[1] Pursuant to the FSA, the warden's determination is of no moment to the Court's analysis and commands no deference: "the terms of the First Step Act give courts independent authority to grant motions for compassionate release and says nothing about deference to BOP, thus establishing that Congress wants courts to take a de novo look at compassionate release motions." United States v. Beck, --- F. Supp. 3d ----, 13-CR-00186-6, 2019 WL 2716505, at *13 (M.D.N.C. June 28, 2019) (publication forthcoming).

spouse); or (4) some other reason "determined by the Director of the [BOP]." See U.S.S.G. § 1B1.13 at cmt. 1.

Since "the Sentencing Commission 'never harmonized its policy statements with the FSA,'" districts courts face a "conundrum." Rodriguez, 2019 WL 6311388, at *7 (quoting United States v. Brown, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "On the one hand, Congress unequivocally said it wishes to 'increase the use . . . of compassionate release' by allowing district courts to grant petitions 'consistent with applicable policy statements' from the Sentencing Commission" but "[o]n the other hand, the Commission . . . has not made the policy statement for the old regime applicable to the new one." Brown, 411 F. Supp. 3d at 449 (quoting 18 U.S.C. § 3582(c)(1)(A)) (some alternations omitted).

A "growing number of district courts" that have considered this question have "concluded that, in the absence of applicable policy statements, courts 'can determine whether any extraordinary and compelling reasons other than those delineated in [U.S.S.G. § 1B1.13] warrant'" sentence modification. Rodriguez, 2019 WL 6311388, at *7 (quoting Brown, 411 F. Supp 3d at 449); see also, e.g., United States v. Chan, No. 96-CR-00094-JSW-13, 2020 WL 1527895, at *5 (N.D. Cal. Mar. 31, 2020) (following Rodriguez and concluding that reasons "other than those delineated in" U.S.S.G. § 1B1.13 could "warrant a reduction in Chan's sentence"); United States v. Beck, --- F. Supp. 3d. ----, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019) (publication forthcoming); United States v. Cantu, --- F. Supp. 3d ----, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019) (publication forthcoming); United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019). These courts reasoned that Congress passed the FSA—and, more specifically, enabled incarcerated persons to file "direct motions to district courts" for sentence modification—to "increase the use of compassionate release," and determined that "the only way" to give force to that command "is to allow district judges to consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'" Brown, 411 F. Supp. 3d at 451.

The Court agrees. "[I]f the FSA is to increase the use of compassionate release, the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it." Id. at 451. The government's argument that the pre-FSA categories contained in U.S.S.G. § 1B1.13 limit this Court's discretion to determine whether Wade has raised "extraordinary and compelling" circumstances that justify the modification of her sentence is, accordingly, without merit.

The question then becomes whether the evidence of Wade's rehabilitation and changes to § 924(c), in combination, comprise "extraordinary and compelling" circumstances that justify a modification to her sentence. Notably, the government does not dispute that Wade has excelled

in her personal development, education, and work while incarcerated. See supra § II.B; see also Opp. at 9 (acknowledging that Wade's rehabilitation is "exemplary" but contending that her rehabilitation, "by itself, may not be the basis for relief"). Nor does the government dispute that, pursuant to the FSA, the mandatory 780-month sentence Wade received for her § 924(c) offenses would have amounted to a 240-month sentence had she been convicted today. See Opp. at 7 n. 4.

Although it is clear that Wade's rehabilitation alone would not qualify her for a sentence reduction as a matter of law, see 18 U.S.C. § 994(t), the Court concludes that the combination of factors raised by her motion establishes extraordinary and compelling conditions that do. See Brown, 411 F. Supp. 3d at 449 (explaining that "rehabilitation may be considered with other factors"). A district court in the Northern District of California recently had occasion to consider a similar argument involving the combination of rehabilitation and changes to § 924(c) in United States v. Chan, No. 96-CR-00094-JSW-13, 2020 WL 1527895 (N.D. Cal. March 31, 2020) (cited supra) and also concluded that the defendant's "rehabilitation efforts *in combination* with the amendments to [§] 924(c)'s stacking provisions . . . demonstrated extraordinary and compelling reasons to reduce his sentence on those two counts." Id. at *6 (emphasis added). The district court reached this conclusion over the objection advanced by the government in that case—but not here—that the court could not consider the amendments to § 924(c) "because Congress chose not to make the amendments retroactive." Id.; see also supra § II.C (explaining that Section 403 of the FSA did not give its amendments retroactive effect). Rejecting that argument, the court explained that "[i]t is not unreasonable for Congress to conclude that not *all* defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve *some* defendants of those sentences on a case-by-case basis." Chan, 2020 WL 1527895, at * 6 (quoting United States v. Maumau, No. 08-CR-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020)) (emphasis original).

A number of other district courts, in addition to Chan and Maumau, have also found that the "drastic reduction in § 924(c) sentences with its elimination of stacking . . . in combination with other circumstances" may "warrant[] a modification of the defendant's sentence." United States v. O'Bryan, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020); see, e.g., Brown, 411 F. Supp. 3d at 453 (stating that a "district court assessing a compassionate release motion may still consider the resulting sentencing disparity" caused by the FSA in § 924(c) cases); United States v. Young, No. 00-CR-00002-1, 2020 WL 1047815, at *8 (M.D. Tenn. Mar. 4, 2020) ("The court finds that the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), at least when considered in conjunction with" other factors); United States v. Urkevich, No. 03-CR-00037, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the

injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed.").

In 1999, Wade received a mandatory-minimum sentence—one amounting to life in prison—that Congress has since determined to be exceedingly inhumane and profoundly unfair. But instead of dwelling on that "injustice," Urekvich, 2019 WL 6037391, at *4, Wade has spent the past 20-plus years serving her sentence as a recognized example to her peers, and as a model for what rehabilitative programming can achieve for incarcerated individuals who strive for self-improvement. Had Wade been convicted today and sentenced to the same 97-month term of imprisonment for the § 1951 robbery counts and the same mandatory-minimum sentence for the § 924(c) counts, she would not have been sentenced to more than 337 months (28 years and 1 month) of prison time since—by the terms of the FSA—the four § 924(c) counts would have carried a 240-month prison term (a mandatory-minimum 60-month prison term on each count). See supra § II.C (describing the amendments to § 924(c) in Section 403 of the FSA). Wade has nearly completed 75% of that time. Based on her exceptional personal growth, and "the injustice of facing a term of incarceration" several decades "longer than Congress now deems warranted," Urekvich, 2019 WL 6037391, at *4, the Court concludes that Wade has demonstrated extraordinary and compelling reasons that could warrant a sentence reduction pursuant to § 3582(c)(1).

### C. Consistency With § 3553(a) Factors

A sentence reduction, even if justified by the existence of extraordinary and compelling reasons, may only be granted if it would be consistent with the factors set forth in 18 U.S.C. § 3553, to the extent they apply. See Rodriguez, 2019 WL 6311388, at *5. These factors require the Court to consider, in this case,[2] whether early release is consistent with (1) the nature and circumstances of Wade's offenses and personal history, (2) the need to instill respect for the law, deter future crimes, provide for Wade's rehabilitation, and protect the public, and (3) the need to avoid unwarranted sentence disparities among defendants with similar records. See 18 U.S.C. § 3553(a). Wade contends that each of these relevant factors tips in her favor, most notably by presenting evidence and statistics, in addition to the narrative and record evidence of rehabilitation discussed in § II.B supra, that women like her in their late fifties with limited

---

[2] Other § 3553(a) factors include the kinds of sentences available, the sentencing range established for the applicable category of offense, applicable guidelines or policy statements issued by the Sentencing Commission, and the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a)(3)-(5), (7). However, because a § 3582(c)(1) motion only requires the Court to consider relevant factors, and because neither Wade nor the government raises any of these factors, the Court does not consider them here.

criminal records are unlikely to recidivate. See U.S. Sentencing Comm., The Effects of Aging on Recidivism Among Federal Offenders at 24-25 (2017).[3]

The government does not advance any opposition to Wade's contention that the § 3553(a) factors favor a reduction to her sentence. Indeed, at oral argument, the government acknowledged that Wade's time in prison has been "exemplary," and that early release would be consistent with § 3553(a). Where the government "offers no rejoinder" to an incarcerated movant's evidence "indicating rehabilitation progress and favorable behavior," "has not shown that additional imprisonment will serve the interests of deterrence, or is necessary to protect the public," and has not "disputed the defendant's calculation of the radically different sentence [s]he would have received if [s]he were subject to the FSA," an order granting a reduction to a defendant's sentence is deemed to be consistent with § 3553(a). O'Bryan, 2020 WL 869475, at *2 (concluding that "O'Bryan's crimes were indeed serious, but they would be appropriately punished by 60 months on each § 924(c) offense, coupled with 51 months on the remaining counts, all running consecutively," which "would have satisfied the § 3553 factors").

The Court finds that a reduced sentence is consistent with § 3553 in these circumstances. Were Wade convicted today and sentenced to the same 97-month term of imprisonment for the § 1951 robbery counts and the same mandatory-minimum sentence for the § 924(c) counts—assuming she were even charged with all four § 924(c) offenses[4]—she would not have been sentenced to more than 337 months: 60 months on each § 924(c) offense, plus 97 months on the § 1951 counts, to run consecutively. Wade has already served 243 months in federal prison. Requiring Wade to serve the 50-plus years outstanding on her original sentence would not, based on the record before the Court, accomplish any of the objectives identified by Congress in § 3553.

---

[3] Wade also notes that several of her co-defendants have already been released for their involvement in robberies, despite having taken more prominent roles. However, because these defendants pled guilty and/or cooperated with the prosecution, their lesser sentences are not comparable to Wade's and the Court declines to consider them.

[4] And it is far from clear that she would be. See Mem. of Atty. Gen. John Ashcroft, "Department Policy Concerning Charging Criminal Offenses, Disposition of Charges, and Sentencing" (Sept. 22, 2003) (giving federal prosecutors discretion not to charge second or more § 924(c) offenses); Mem. of Atty. Gen. Eric H. Holder, "Department Policy on Charging and Sentencing" (May 19, 2010) (giving federal prosecutors additional discretion to decline charges or statutory enhancements based on whether they "fairly represent the defendant's criminal conduct")

For the foregoing reasons, the Court concludes that a sentence reduction is consistent with the § 3553 factors.

In the Court's tentative ruling stating this conclusion, the Court requested oral argument from the government and Wade as to the appropriate reduction that should be applied to Wade's sentence pursuant to this determination. The parties were specifically instructed to address: (i) the legal basis, if any, that warrants further reducing Wade's term of imprisonment beyond a reduction to 337 months; and (ii) how requiring Wade, who has already served 243 months of her sentence, to serve an additional 94 months in prison is consistent with the factors set forth in § 3553(a). At oral argument, the government restated its objection to the Court's application of the FSA to find "extraordinary and compelling reasons" justifying a reduction to Wade's sentence, discussed supra at § IV.B, but acknowledged that the Court had legal authority to reduce Wade's sentence beyond a reduction to 337 months up to and including compassionate release for time served. The government also stated that it would not object to compassionate release for time served, that such release would be consistent with the factors set forth in § 3553(a), and that there was no need to require Wade to serve an additional 94 months in prison, provided she remain subject to three years of supervised release. Wade contended that release for time served would be an appropriate reduction.

In light of the government's assent, and in view of Wade's record, the Court concludes that a reduction in sentence to time served, plus three years of supervised release, is appropriate and consistent with § 3553(a).

## V. CONCLUSION

Wade's motion is **GRANTED.** Wade's sentence shall be reduced to **TIME SERVED**, followed by three years of supervised release subject to the conditions set forth in the Court's judgment and commitment order dated December 22, 1999. See ECF No. 294.

As a condition precedent to release, Wade shall submit to 14-day quarantine at an appropriate BOP facility or, in appropriate cases subject to the BOP's case-by-case discretion, in the residence to which she is being transferred, inclusive of any time already spent in such quarantine. As a condition precedent to release, Wade shall also submit to a health screening by the BOP. If Wade is found to be exhibiting symptoms consistent with COVID-19 or is confirmed to have COVID-19, Wade shall not be released to the public because of the public health danger she may pose to the community.

Following release, Wade shall submit to screening for COVID-19 as directed by the United States Probation and Pretrial Services Office ("USPO"). Should Wade then or thereafter exhibit symptoms consistent with COVID-19, Wade shall remain in quarantine or isolation as directed

by USPO in a form directed by USPO, including self-isolation or self-quarantine. During the period of supervised release, Wade shall comply with national, state, and local public-health orders regarding COVID-19, including but not limited to California's Executive Order N-33-20 (March 19, 2020) and, if applicable, the Los Angeles "Safer At Home" Order, Public Order Under City of Los Angeles Emergency Authority (March 19, 2020), as amended on April 10, 2020.

IT IS SO ORDERED.

|  | 00 | : | 10 |
|---|---|---|---|
| Initials of Deputy Clerk | CMJ | | |